_____

| | | |
|---|---|---|
| JEROME WILLIAMS and CHERYL ANN DOCKERY, on behalf of themselves and others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 09-02376-STA-tmp |
| | ) | |
| HOOAH SECURITY SERVICES LLC, a domestic limited liability company, and RIC BAILEY, individually, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

_____

### ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

_____

Before the Court is Plaintiffs' Motion for Summary Judgment (D.E. # 49), filed on March 23, 2011, and Defendants' Motion for Summary Judgment (D.E. # 54), filed on March 31, 2011. For the following reasons, Plaintiffs' Motion for Summary Judgment is **GRANTED** and Defendants' Motion for Summary Judgment is **DENIED**.

### BACKGROUND

On June 16, 2009, Jerome Williams and Cheryl Ann Dockery, along with the other members of this collective action ("Plaintiffs"), filed a Complaint alleging that Ric Bailey and Hooah Security Services LLC ("Defendants") failed to properly pay Plaintiffs for those hours worked in excess of forty per workweek under the Fair Labor Standards Act ("FLSA"). The following facts are undisputed for purposes of this Motion unless otherwise noted.

Defendant Hooah Security Services LLC ("Hooah") is a company which provides security guard services and patrols for businesses in and around the Memphis, Tennessee, area. (Defs.' Reply to Pls.' Statement of Undisputed Facts ¶ 1.)  Defendant Ric Bailey ("Defendant Bailey") has owned and operated Hooah by himself since 2008.  (*Id.* ¶ 2.)  Defendant Bailey interviewed and hired Plaintiffs and other security guard employees of Hooah and made hiring and firing decisions.  (*Id.* ¶ 3.)  He also determined Plaintiffs' amount of payment, whether they received raises, and their work schedules.  (*Id.* ¶ 4, 6.)  Defendant Bailey set Hooah's employment policies and negotiated its contracts with its customers.  (*Id.* ¶ 5, 8.)  Defendants advertised their services online via Hooah's website, and Defendants have both recruited and hired employees from Mississippi and Arkansas by using Monster.com.  (*Id.* ¶ 12-14.)  Defendants had gross sales of $700,000 and over $500,000 in gross sales in 2008-2009.  (*Id.* ¶ 11.)

### Defendants' Business Activities

It is undisputed that Defendants have provided security services for residential apartment complexes in Memphis, Tennessee.  (*Id.* ¶ 9.)  Defendants dispute that they provided security services for a private school (*Id.*), and Plaintiffs assert that Defendants provided security services for a Longhorn Steakhouse Restaurant.  (Pls.' Resp. to Defs.' Statement of Undisputed Facts ¶ 3.)  The parties do not dispute that Hooah provided security services for only business entities or enterprises inside Tennessee (Defs.' Reply to Pls.' Statement of Undisputed Facts ¶ 4), and Hooah's employee security officers were not authorized to perform any services outside Tennessee.  (*Id.* ¶ 7.)  Additionally, Defendants did not engage in the production of "goods for commerce."  (Defs.' Statement of Undisputed Material Facts ¶ 5.)

2

Plaintiffs state that Defendants sold security supplies "such as shirts, handcuffs, flashlights, and batons" out of Defendants' offices (Pls.' Statement of Undisputed Facts ¶ 15.) Defendants dispute this fact. They argue that at all times material to the allegations in the complaint, Defendants did not sell security supplies. (Defs.' Reply to Pls.' Statement of Undisputed Facts ¶ 15.) According to Defendant, Fred McWilliams ("McWilliams"), one of Hooah's former district managers, sold security supplies out of Hooah's office. (*Id.*) However, Defendants allege that McWilliams' sales of the shirts, handcuffs, flashlights, batons, and other such items began in the spring of 2010—after the allegations in Plaintiffs' complaint. (*Id.*) For the same reasons, Defendants dispute that Defendants and one of the district managers sold security supplies out of Hooah's office, that the items were sold to Defendants' security guard employees, and that the items were obtained by Defendants from a uniform company in California. (*Id.* ¶ 16-18.)

Plaintiffs dispute that Defendants did not sell security supplies to Defendants' security guard employees during the time of Plaintiffs' employment with Defendants. (Pls.' Resp. to Defs.' Statement of Undisputed Facts ¶ 8.) Plaintiffs state that Defendant Bailey shared in the revenues of security supplies sold to Defendants' security guard employees by another of Defendants' employees. (*Id.*) Additionally, Plaintiffs state that Defendants provided and sold security supplies to security guard employees during Plaintiffs' employment with Defendants. (*Id.*)

### The Use of Materials by Defendants' Employees

Defendants state that their security officers were required to have only a flashlight and a cell phone and that each employee normally provided their own flashlights and cellular

telephones.  (Defs.' Statement of Undisputed Facts ¶ 9.)  However, Hooah purchased a flashlight, cell phone, and clothing for Plaintiff Cheryl Dockery ("Plaintiff Dockery") "because she did not have them."  (Defs.' Reply to Pls.' Statement of Undisputed Facts ¶ 19.)  Plaintiffs deny that Defendants' employees were required to carry only a flashlight and cell phone, stating that "some of the posts and patrols that Plaintiffs worked were armed posts requiring the guard be armed with a gun while on duty."  (Pls.' Resp. to Defs.' Statement of Undisputed Facts ¶ 9.)

Plaintiffs filed a Statement of Additional Undisputed Facts in Support of Their Opposition to Defendants' Motion for Summary Judgment.  (Pls.' Resp. to Defs.' Statement of Undisputed Facts at 4-5.)  In these Additional Undisputed Facts, Plaintiffs state that on "certain occasions," Defendants supplied Plaintiffs and other security guard employees with materials for use on the job obtained from Wal-Mart or another local supply store.  (*Id.* ¶ 5.)  Plaintiffs also state that Defendants employed armed guards who were required to carry a weapon.  (*Id.* ¶ 3.)

At least Plaintiffs Jerome Williams ("Plaintiff Williams") and Darrell Hoskins, as well as "some of the other Plaintiffs," were armed guards required to carry a weapon.  (*Id.* ¶ 4.)  Plaintiffs point out that Plaintiff Williams was an armed guard who carried a Glock automatic handgun and handcuffs while he was patrolling for Defendants.  (*Id.* ¶ 6-7.)  Plaintiff Williams purchased the gun in Olive Branch, Mississippi, and its magazine was manufactured in Australia.  (*Id.* ¶ 6)  Plaintiff Williams purchased the Massachusetts-made handcuffs at a Memphis, Tennessee, security supply store.  (*Id.* ¶ 7.)  Additionally, Plaintiff Darrell Hoskins worked for Defendants as an armed guard, and he carried a Taurus 9 mm pistol while on patrol.  (*Id.* ¶ 8.)  Plaintiff Darrell Hoskins' pistol was manufactured in Miami, Florida.  (*Id.*)  His Bianchi duty belt was made in Mexico, and his pepper spray was made in Ft. Lauderdale, Florida.  (*Id.*)  Both

the duty belt and the pepper spray were purchased at a security supply store in Memphis, Tennessee. (*Id.*)

Occasionally, Defendants' security guards worked over forty hours per week. (Defs.' Reply to Pls.' Statement of Undisputed Facts ¶ 20.) Defendants do not dispute that their security guards were not paid time and a half of their regular pay for the hours they worked in excess of forty hours a week because Defendants did not have the money to do so. (*Id.* ¶ 21, 24.) Defendants admit that they should have paid their security guards time and a half for their overtime hours. (*Id.* ¶ 23.) Moreover, Defendants did not know that they were required by law to pay their security guards for their overtime hours worked, nor did Defendants determine whether they were required by law to pay their security guards time and a half for their overtime hours. (*Id.* ¶ 22.) Neither party disputes that Defendant's schedule should show the number of hours worked by each employee in any given week. (*Id.* ¶ 25.)

### **Hourly-Paid Plaintiffs**

### **Plaintiff Cheryl Dockery**

Defendants employed Plaintiff Dockery from October 17, 2008, until January 28, 2009. (Defs.' Reply to Pls.' Statement of Undisputed Facts ¶ 41.) She was paid $9 per hour, and she was not paid overtime compensation for the hours she worked in excess of forty per workweek. (*Id.* ¶ 42-43.) Neither party disputes that she worked 104.75 hours of overtime while employed by Defendants and that she is owed $471.38 in overtime compensation if Defendants are covered by the FLSA. (*Id.* ¶ 44.) Defendants dispute that the FLSA applied to them while Plaintiff Dockery was their employee.

### **Plaintiff Zachery Smith**

Defendants employed Plaintiff Zachery Smith ("Plaintiff Smith") from December 9, 2008, through March 14, 2009.  (*Id.* ¶ 55.)  He was paid $10 per hour, but he was not paid overtime compensation for the hours he worked in excess of forty per workweek.  (*Id.* ¶ 56-57.)  Neither party disputes that he worked 32 hours of overtime while employed by Defendants and that he is owed $160.00 in overtime compensation if Defendants are covered by the FLSA.  (*Id.* ¶ 58.)  Defendants dispute that the FLSA applied to them while Plaintiff Smith was their employee.

### Plaintiff Billy Hoskins

Defendants employed Billy Hoskins from January 1, 2009, to March 10, 2009.  (*Id.* ¶ 59.)  He was paid $8 per hour from January 1, 2009, until February 1, 2009, and after February 1, 2009, he was paid $9 per hour.  (*Id.* ¶ 60.)  He was not paid overtime compensation for the hours he worked in excess of forty per workweek.  (*Id.* ¶ 61.)  Neither party disputes that he worked 100.5 hours of overtime while employed by Defendants and that he is owed $428.25 in overtime compensation.  (*Id.* ¶ 62.)  Defendants dispute that the FLSA applied to them while Plaintiff Billy Hoskins was their employee.

### Plaintiff John Boullion

Defendants employed John Boullion ("Plaintiff Boullion") from December 7, 2008, through March 14, 2009.  (*Id.* ¶ 71.)  He was paid $10 per hour, but he was not paid overtime compensation for the hours he worked in excess of forty per workweek.  (*Id.* ¶ 72-73.)  Neither party disputes that Plaintiff Boullion worked 45.05 hours of overtime while employed by Defendants and that he is owed $225.25 in overtime compensation.  (*Id.* ¶ 74.)  Defendants dispute that the FLSA applied to them while Plaintiff Boullion was their employee.

### Salaried Plaintiffs

### Plaintiff Jerome Williams

Defendants employed Plaintiff Williams from December 6, 2007, until February 20, 2009. (Defs.' Reply to Pls.' Statement of Undisputed Facts ¶ 26.) Plaintiff Williams' salary was $400 per week, plus a gas stipend of $200 per week, from January 11, 2008 through June 27, 2008, for a period of 24 weeks. (*Id.* ¶ 27.) His salary increased to $440.00 per week, with a gas stipend of $200 per week, from July 4, 2008, until December 25, 2008, for a period of 25 weeks. (*Id.* ¶ 28.) He did not turn in time sheets showing the number of hours he worked per week, and Defendants do not have records showing the number of hours worked by Williams. (*Id.* ¶ 34.)

Although Defendants do not have pay records for Plaintiff Williams for the periods of December 6, 2007, to January 11, 2008, or December 26, 2008, through February 20, 2009, Plaintiff Williams believes that he was paid his $400 per week salary from December 6, 2007, to January 11, 2008, and his $440 per week salary from December 26, 2008, through February 20, 2009. (*Id.* ¶ 29-30.) During both of these periods, he received his $200 per week gas stipend. (*Id.* ¶ 30.)

Plaintiff Williams spent approximately 20% of his time performing managerial functions for Defendants; he spent the remainder of his time performing normal patrol and security guard functions. (*Id.* ¶ 31.) He did not have the authority to hire and fire employees himself. (*Id.* ¶ 32.) On average, Plaintiff Williams worked fifty hours per week, (*Id.* ¶ 38), and Defendants admit that he worked over forty hours during one or more workweeks while he was employed by Defendants. (*Id.* ¶ 33.) Defendants do not dispute that he was not paid additional compensation for the overtime hours he worked. (*Id.* ¶ 35.) Defendants dispute that Plaintiff Williams was

entitled to overtime pay; Defendants maintain that as a salaried employee, he was not entitled to overtime compensation, and it is for that reason that Defendants did not pay Plaintiff Williams overtime pay. (*Id.* ¶ 35-36.) Defendants dispute Plaintiff Williams' amount of overtime compensation due because he was "not entitled to overtime compensation as a salaried employee." (*Id.* ¶ 39-40.) The parties do not dispute that Plaintiff Williams is owed $3,912.00 in overtime compensation if Hooah is covered by the FLSA and if he is not exempt from FLSA coverage as a salaried employee. (*Id.*)

### Plaintiff Niehaus McKinney

Defendants employed Plaintiff Niehaus McKinney ("Plaintiff McKinney") from March 14, 2008, until March 16, 2009. (*Id.* ¶ 45.) Plaintiff McKinney was paid $9 per hour from March 14, 2008 to May 25, 2008, and he worked approximately twelve hours of overtime per week during this time. (*Id.* ¶ 50-51.) From October 1, 2008, to March 16, 2009, Plaintiff McKinney was paid $400.00 per week with a $50.00 gas stipend per week. (*Id.* ¶ 53.) During the course of his employment with Defendants, Plaintiff McKinney did not have the authority to hire or fire employees. (*Id.* ¶ 46.) Defendants do not have time records for Plaintiff McKinney from March 14, 2008 to May 25, 2008, a ten-week period, or October 1, 2008, to March 16, 2009, a 23-week period. (*Id.* ¶ 49.) Plaintiff McKinney did not have the authority to hire or fire employees. (*Id.* ¶ 47.) Neither party disputes that Plaintiff McKinney worked more than forty hours a week for one or more workweeks but was not paid overtime compensation for those hours. (*Id.* ¶ 48.)

Defendants do not dispute that Plaintiff McKinney would be owed $540.00 for his overtime from March 14, 2008, to May 25, 2008, if Defendants are covered under the FLSA.

(*Id.* ¶ 52.)  However, Defendants dispute that Plaintiff McKinney is owed $490.50 for 109 hours of overtime from May 25, 2008, to October 1, 2008, as he became a salaried employee "on or about June 15, 2008." (*Id.* ¶ 48.)  Additionally, Defendants dispute that Plaintiff McKinney is owed $1150 in overtime pay from October 1, 2008, to March 16, 2009 because he became a salaried employee on or about June 15, 2008.  (*Id.* ¶ 53-54.)  But they do not dispute that Plaintiff McKinney worked approximately ten hours of overtime per week from October 1, 2008, through March 16, 2009.  (*Id.* ¶ 53.)

### Plaintiff Darrell Hoskins

Defendants employed Plaintiff Darrell Hoskins from October 2008 through March 17, 2009.  (*Id.* ¶ 63.)  Plaintiff Darrell Hoskins was paid $10 per hour.  (*Id.*)  Neither party disputes that Plaintiff Darrell Hoskins worked more than forty hours a week for one or more workweeks but was not paid overtime compensation for those hours.  (*Id.* ¶ 64.)  He would be owed $605 of overtime compensation for his work from October 5, 2008, to January 31, 2009, excluding the work he performed from October 11, 2008 to October 25, 2008.  (*Id.* ¶ 65.)  Additionally, neither party disputes that Plaintiff Darrell Hoskins is owed $260.00 for the 54 hours of overtime he performed from October 11, 2008, through October 25, 2008.  (*Id.* ¶ 66-67.)  He also would be entitled to $200.00 in overtime compensation for the work he performed from February 1, 2009, to March 17, 2009.  In total, the parties do not dispute that Plaintiff Darrell Hoskins would be owed $1065.00 in overtime compensation.

While Defendants do not dispute the monetary amounts stated by Plaintiff Darrell Hoskins which would be owed to him for his hourly work if Hooah is a covered enterprise (*Id.* ¶ 65, 69-70), Defendants deny that they owe him overtime compensation for the overtime that he

worked while he was a salaried employee.  (*Id.* ¶ 65, 69-70.)  Defendants maintain that Plaintiff

Darrell Hoskins became a lieutenant—and thereby a salaried employee—on or about November

16, 2008, and he maintained that position throughout the remainder of his employment.  (*Id.* 65,

69-70.)  Thus, despite Defendants' lack of time records for Plaintiff Darrell Hoskins from

February 1, 2009, through March 17, 2009 (*Id.* ¶ 68), Defendants state that he is not entitled to

overtime compensation because he was a salaried employee at the time.  (*Id.* ¶ 69-70.)

### Plaintiff Wesley Pruett

Defendants employed Plaintiff Wesley Pruett ("Plaintiff Pruett") from February of 2008

through October of 2008.  (*Id.* ¶ 75.)  Plaintiff Pruett earned a salary of $420.00 per week from

February 2008 through March of 2008, and he earned $440.00 per week from March of 2008 to

October of 2008.  (*Id.* ¶ 76.)  He worked approximately fifty-five hours a week, and he did not

have the authority to hire or fire employees or manage or direct employees.  (*Id.* ¶ 77-78.)

Defendants do not have records showing the amount of hours worked by Plaintiff Pruett or the

amount of money he was paid.  (*Id.* ¶ 79.)

Plaintiffs assert that Plaintiff Pruett worked overtime hours while employed by

Defendants but was not paid overtime compensation.  (*Id.* ¶ 80-81.)  They claim that he is owed

$2,149.10 in overtime wages.  (*Id.* ¶ 81.)  Defendants dispute these facts because Plaintiff Pruett

was "always a salaried employee of Hooah."  (*Id.* ¶ 80-81.)

### <u>The Parties' Arguments</u>

In their Motion for Summary Judgment, Plaintiffs contend that Defendants were covered

by the FLSA on the basis of enterprise coverage.  (Pls.' Mem. in Supp. of Mot. for Summ. J.,

D.E. # 49-1, at 5.)  For purposes of this Motion, Plaintiffs do not argue that they were

individually covered by the FLSA. (*Id.*) Because Defendants admit that they had annual gross revenue in excess of $500,000 per year, Plaintiffs assert that "the only remaining inquiry is whether . . . Defendants' business meets the 'interstate commerce' requirements of the FLSA." (*Id.*) Plaintiffs also allege that Defendant Bailey was Plaintiffs' joint employer and that he is jointly and severally liable to Plaintiffs for their damages. (*Id.* at 3.) Plaintiffs then assert that because Defendants were covered by the FLSA, Defendants violated its provisions by failing to pay Plaintiffs time-and-a-half for the time they worked in excess of forty hours per workweek. Plaintiffs also extensively outline the hours worked and wages allegedly owed to them. (*Id.* at 6-13.)

In response, Defendants refer to their separate Motion for Summary Judgment on the enterprise coverage issue and briefly argue that they are not covered by the FLSA because they are not engaged in interstate commerce. (Resp. of Defs. to Pls.' Mot., D.E. # 55, at 1.) Moreover, Defendants assert that even if they are covered by the FLSA, their four salaried employees—Plaintiffs Williams, McKinney, Pruett, and Darrell Hoskins—were not entitled to overtime payment once they became salaried employees. (*Id.* at 1-2.) Defendants also argue that these salaried employees "accepted their salaries without protest" and thus consented to the payment of the fixed sum without regard for the number of hours worked each week. (*Id.* at 2.)

In reply, Plaintiffs point out that Defendants did not dispute the overtime compensation claims of Plaintiffs Dockery, Boullion, Smith, and Billy Hoskins if Defendants are covered by the FLSA. (Pls.' Reply in Supp. of their Mot. for Summ. J., D.E. # 57, at 2.) Plaintiffs also refer to their Response to Defendants' Motion for Summary Judgment to address Defendants' argument that Hooah is not an enterprise covered by the FLSA. (*Id.*) Plaintiffs assert that, under

the FLSA, the salaried employees are due compensation and that employees cannot expressly or implicitly waive their rights to overtime compensation. (*Id.* at 4.) Additionally, Plaintiffs argue that no FLSA exemptions apply and that Defendants have not raised any affirmative defenses exemptions to FLSA coverage. (*Id.* at 5.)

Defendants also filed a Motion for Summary Judgment. In their Motion, Defendants argue that there is no FLSA coverage for individual employees based upon their employment actions. (Defs.' Mot. for Summ. J., D.E. # 54-1, at 2-4.) Defendants aver that because no employee engaged in commerce, produced goods for commerce, or affected interstate commerce, there can be no individual coverage under the FLSA. (*Id.* at 2-3.) Defendants also argue that Hooah was not a covered enterprise under the FLSA. (*Id.* at 4-6.) They assert that the only applicable enterprise coverage clause is the portion asserting that Defendants' employees "handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person." (*Id.* at 5.) Even if the Court finds that Defendants' employees handled items that have been moved in interstate commerce, Defendants argue that such handling is de minimis and will not require compensation. (*Id.* at 7.) Defendants assert that their employees did none of these actions and that their "operations in providing security services to residential apartment complexes in Tennessee is fundamentally an intrastate activity." (*Id.* at 6.)

In response, Plaintiffs argue that Defendants "employed two or more employees who handled materials that had been moved in commerce or produced for commerce." (Pls.' Resp. to Defs.' Mot. for Summ. J., D.E. # 56, at 1-2.) Plaintiffs reiterate that they do not contend that they were individually covered by the FLSA, but they do assert that Defendants were a covered enterprise under the FLSA. (*Id.* at 3.) Plaintiffs aver that enterprise coverage is met under the

FLSA's "handling" clause "if employees merely handle tools, supplies, or equipment that originated out of state." (*Id.* at 4.) Plaintiffs also acknowledge that a dispute remains as to whether Defendants' sale of security supplies is sufficient to trigger enterprise liability under the FLSA during the time of the events asserted in the Complaint. (*Id.* at 5.)

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that the

> court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[1]

In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party.[2] When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but instead must present some "specific facts showing that there is a genuine issue for trial."[3] It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[4] These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[5] When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so

---

[1]    Fed. R. Civ. P. 56(a).

[2]    *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[3]    *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

[4]    *Matsushita*, 475 U.S. at 586.

[5]    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

13

one-side that one party must prevail as a matter of law."[6]

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[7]  In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [his] asserted causes of action."[8]

## ANALYSIS

### Enterprise Coverage

"Congress enacted the [FLSA] 'to compensate those who labored in excess of the statutory maximum number of hours for the wear and tear of extra work.'"[9] Section 207 of the FLSA provides that:

> [e]xcept as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.[10]

Here, Plaintiffs do not contend that they were individually covered by the FLSA.  Instead, they argue that the FLSA covers Hooah under its enterprise coverage provision.

---

[6]      *Id*. at 251-52 (1989).

[7]      *Celotex*, 477 U.S. at 322.

[8]      *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[9]      *Wood v. Mid-Am. Mgmt. Corp.*, 192 F. App'x 378, 379 (6th Cir. 2006) (quotation omitted).

[10]      29 U.S.C. § 207.

Enterprise coverage attaches to a business where it is an "[e]nterprise engaged in commerce or in the production of goods for commerce."[11] The FLSA defines this phrase to include an enterprise that (1) "has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person;" and (2) "is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated."[12] It is undisputed that Defendants satisfy the second requirement of enterprise coverage, as they had annual gross revenue in excess of $500,000 per year. Therefore, whether Hooah qualifies under the FLSA's enterprise coverage provision depends upon whether Hooah's employees "engaged in commerce or in the production of goods for commerce" or "handl[ed], [sold], or otherwise work[ed] on goods or materials that have been moved in or produced for commerce by any person."[13] Because the parties do not dispute that Hooah's employees did not produce goods for commerce, whether Hooah is a covered enterprise depends upon whether its employees engaged in commerce or handled, sold, or otherwise worked on goods or materials that have been moved in or produced for commerce by any person.[14]

---

[11]     *Id.*

[12]     29 U.S.C. § 203(s)(1)(A)(i)-(ii). The FLSA defines "commerce" as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." *Id.* § 203(b).

[13]     *Id.* § 203(s)(1)(A)(i).

[14]     *See* 29 U.S.C. § 203(s)(1)(A)(i). The latter requirement is rarely difficult to establish because it is met by showing that two or more employees have handled materials that have been moved in commerce. *Jacobs v. New York Foundling Hosp.*, 577 F.3d 93, 99 n.7 (2d Cir. 2009) (quotation and internal punctuation omitted).

Although Congress did not specifically define "materials" in the FLSA, and the Sixth Circuit has not yet weighed in on the definition of "materials," the Eleventh Circuit has exhaustively evaluated the several possible meanings for "materials" in light of the FLSA's definition of "goods."[15]  After reviewing several definitions, the Eleventh Circuit ultimately defined "materials" as "tools or other articles necessary for doing or making something" which "have a significant connection with the employer's commercial activity."[16]  In summary, the Eleventh Circuit stated that

> [f]or purposes of the FLSA's handling clause, an item will count as "materials" if it accords with the definition of "materials"—tools or other articles necessary for doing or making something—in the context of its use and if the employer has employees "handling, selling, or otherwise working on" the item for the employer's commercial (not just any) purpose.[17]

Additionally, "[c]ourts have consistently construed the FLSA liberally to apply to the farthest reaches consistent with congressional directs."[18]

The Court has applied these principles in another similar case.  In *Dixon v. Maximum Sec. Serv., LLC*, all plaintiffs were armed security guards.[19]  This Court noted that three employees were required to carry handguns while on patrol as security officers, and these handguns were manufactured out of the state of Tennessee.[20]  Plaintiffs used these handguns "for

---

[15]     *See Polycarpe v. E&S Landscaping Serv., Inc.*, 616 F.3d 1217, 1221-27 (11th Cir. 2010).

[16]     *Id.* at 1226.

[17]     *Id.* at 1227.

[18]     *Kowalski v. Kowalski Heat Treating Co.*, 920 F. Supp. 799, 803 (N.D. Ohio 2006) (citing *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 296 (1985)).

[19]     No. 08-2746, 2011 WL 2182349, at *5 (W.D. Tenn. June 3, 2011).

[20]     *Id.*

Defendant's commercial purpose of providing armed security services to its clients."[21]  Because they were "articles necessary for doing something"—providing security for clients—the Court held that the Plaintiffs' handguns were "materials" within § 203(s)(1)(A)(i) of the FLSA.[22]  The Court further held that "the employees were handling the handguns for the employer's commercial purposes—providing security for clients"—and that the defendant was a covered enterprise under the FLSA.[23]

Here, Plaintiffs assert that at least two security guards were required to carry handguns and magazines, and that these objects' travel in interstate commerce, combined with Plaintiffs' use of these items while working as security guards, subject Defendants to enterprise coverage under the FLSA.  Defendants assert that Hooah is not an enterprise covered by the FLSA because its employees do not handle materials or goods that have been moved in or produced for commerce.  Moreover, Defendants aver that because they did not supply their employees with materials or goods moving in or produced for commerce, enterprise coverage does not exist.  Defendants also argue that they provide security services to residential apartment complexes and that this activity is fundamentally intrastate.

Defendants' arguments are not well-taken in light of the analysis in *Dixon* and *Polycarpe*.  Here, just as in *Dixon*, Plaintiffs are security guards, at least two of whom were armed security guards required to carry a weapon while on duty.  Plaintiff has presented undisputed facts that Plaintiff Williams' gun was purchased in Olive Branch, Mississippi, and its magazine was

---

[21]     *Id.*

[22]     *Id.* at *6.

[23]     *Id.*

manufactured in Australia.  Plaintiff Darrell Hoskins' pistol was manufactured in Miami,

Florida.  That Defendants did not provide these materials to its employees has no bearing on

enterprise coverage.  Rather, the Court examines whether the handguns are "materials" and if so,

whether they were "handled" for Defendants' commercial purposes.

The Court finds that Plaintiffs' handguns are "materials" within the definition of the

FLSA because they are "articles necessary for doing something"—providing security for clients.

The Court also finds that Plaintiffs used these firearms for Defendants' commercial purpose of

providing armed security services to its clients.  The parties do not contest that Defendants had

annual gross revenue in excess of $500,000 per year.  Therefore, the FLSA applies to Defendants

by virtue of its enterprise coverage provision.

Because the Court finds that Hooah is a covered enterprise under the FLSA's handling

clause, the Court need not address Plaintiffs' assertions that Hooah is a covered enterprise due to

its sale of security supplies that have been moved in commerce.  While the sale and timing of

security supplies remains in dispute, Hooah is a covered enterprise as a matter of law by virtue of

the handling clause.  Because the material facts surrounding the Court's holding as to the

handling clause are not in dispute, summary judgment on this issue remains appropriate.

**Rule of De Minimis**

Defendants present an alternative argument.  They argue that "if the Court were to find

that some of the foregoing items[24] may have in some minor way affected interstate commerce, it

---

[24]     Defendants refer to flashlights and cellular telephones discussed earlier in their motion.
The Court will construe this phrase to include the pepper spray, duty belt, firearms, and gun
magazines also used by Plaintiffs in the performance of their duties.

should not trigger the application of the Act to these [D]efendants."[25]  Defendants then cite to a case establishing the "rule of de minimis."

The Sixth Circuit recognized the rule of de minimis in a 1949 decision: it said that "[w]here some inconsequential incident of interstate commerce happens to result from the general conduct of a fundamentally intrastate business, the rule of deminimis [sic] is applicable and the [FLSA] does not apply."[26]  In *Hunter*, enterprise coverage was primarily alleged on the basis of production of goods for commerce, rather than on the basis of handling materials that have moved in interstate commerce.[27]  Indeed, the court took pains to detail the distance between the plaintiffs' work and interstate commerce by noting that the defendant

> was [not] engaged in the production of goods for commerce by reason of the fact that it caused the waste paper, gathered from the offices of the building in cleaning operations, to be sold to a waste paper dealer, that some of it was thereafter processed into roofing felt, and, of this, a certain amount eventually found its way into interstate commerce.[28]

The court also held that "such part of the roofing material as may have gone into commerce was too many steps removed from the process of handling by the building employees to come within the confines of the [FLSA]."[29]  Thus, the court refused to extend the same attenuated reasoning to find coverage under the FLSA's handling provision.  While the Fifth Circuit has interpreted *Hunter*'s holding to apply the de minimis rule "[i]n determining whether transactions are in

---

[25]     (Defs.' Mem. in Supp. of Mot. for Summ. J., D.E. # 54-1, at 7.)

[26]     *Hunter v. Madison Avenue Corp.*, 174 F.2d 164, 167 (6th Cir. 1949).

[27]     *See id.*

[28]     *Id.*

[29]     *Id.*

interstate commerce under the [FLSA],"[30] the Sixth Circuit appears to extend the rule of de minimis to enterprises under the handling clause as well.

The court in *Houchin v. Thompson* did not extend enterprise coverage on the basis of engaging in commerce or producing goods for commerce.[31]  In that case, the alleged interstate activity involved the placement of waste paper in boxes, which would then be sold to a "local concern," which would then break open the bales of waste paper and mix it with other paper before shipping approximately 21.75% of the larger bales of paper out of state.[32]  The *Houchin* court merely quoted the following language from *Hunter* when it declined to find enterprise coverage: "[w]here some inconsequential incident of interstate commerce happens to result from the general conduct of a fundamentally intrastate business, the rule of de minimis is applicable and the [FLSA] does not apply."[33]

Here, the Court finds that the rule of de minimis articulated in *Hunter* and its progeny is inapplicable to the case at bar.  The Court has determined that Defendants are a covered enterprise by virtue of the FLSA's handling clause.  Although *Hunter* implied that the rule of de minimis applies to enterprises covered under the FLSA's handling clause, in this case, the handling of materials produced in interstate commerce is not de minimis.  Plaintiffs are security guards, and at least two of them are required to carry weapons while they perform their job duties.  Plaintiffs have submitted the declarations of two armed guards whose weapons were

---

[30]     *Skinner v. U.S. Steel Corp.*, 233 F.2d 762, 764 (5th Cir. 1956).

[31]     No. C-67-216, 1969 WL 313, at *2 (W.D. Tenn. Nov. 18, 1969).

[32]     *Id.* at *1.

[33]     *Id.* at *2.

manufactured outside Tennessee.  Their use of the weapons as part of their employment was not

de minimis; they were hired to provide armed security, and they did so at all times while they

were working.  Such use of materials which have moved in interstate commerce is not de

minimis, and the rule of de minimis does not apply.

Thus, for the foregoing reasons, Defendants' Motion for Summary Judgment as to

enterprise coverage is **DENIED**, and Plaintiffs' Motion for Summary Judgment as to enterprise

coverage is **GRANTED**.

## Coverage of Salaried Employees

### FLSA Exemption

While Defendants do not challenge the FLSA's applicability to their hourly employees if

Hooah is a covered enterprise, Defendants argue that their salaried employees are exempt from

FLSA coverage.  The FLSA "contains certain exemptions from the overtime compensation

requirement," but these "exemptions . . . are narrowly construed against the employer."[34]  The

applicability of an FLSA exemption is an affirmative defense that an employer must establish by

a preponderance of the evidence.[35]  Defendants bear the burden of proving affirmative defenses

under the FLSA.[36]  To satisfy their burden of proof, defendants generally must identify the

specific exemption they wish the court to apply to their case.[37]  The Sixth Circuit has further

---

[34]     *Baden-Winterwood v. Life Time Fitness, Inc.*, 566 F.3d 618, 626 (6th Cir. 2009).

[35]     *Renfro v. Ind. Mich. Power Co.*, 497 F.3d 573, 576 (6th Cir. 2007) (citation omitted).

[36]     *Brock v. City of Cincinnati*, 236 F.3d 793, 809 (6th Cir. 2001).

[37]     *See, e.g.*, *Burson v. Viking Forge Corp.*, 661 F. Supp. 2d 794, 799 (N.D. Ohio 2009)
(defendant asserted that plaintiff, as a shift supervisor, was an "executive employee" exempt
under the FLSA); *Leonard v. Dolgencorp Inc.*, No. 4:10-CV-57-H, 2011 WL 2009937, at *1,
*10 (W.D. Ky. May 23, 2011) (defendant moved for summary judgment "on the grounds that

observed that an employer "must establish through 'clear and affirmative evidence' that the employee meets every requirement of an exemption."[38]  In their Answer, Defendants pled as a fourth defense that Plaintiff "Williams was a salaried employee and was exempt from coverage under the FLSA."[39]  Defendants later extended this argument to all salaried plaintiffs in this case.

29 U.S.C. § 213(a)(1) provides that "the provisions of section 206 . . . and section 207 of this title shall not apply with respect to any employee employed in a bona fide executive, administrative, or professional capacity."  While Defendants have not cited to any legal authority or informed the Court under which exemption their salaried employees qualify, the Court interprets their filings to be referring to bona fide executive employees or bona fide administrative employees.  The Secretary of Labor has adopted regulations defining a bona fide executive employee.  To be exempt from FLSA coverage by virtue of their status as a bona fide executive, employees must (1) be "[c]ompensated on a salary basis at a rate of not less than $455 per week," (2) have the primary duty of "management of the enterprise in which [they are] employed," (3) "customarily and regularly direct the work of two or more other employees," and (4) have "the authority to hire or fire other employees."[40]

Here, Defendants do not dispute that Plaintiff Williams earned a salary of $400 per week before he was promoted; after his promotion, he earned $440 per week.  Nor do they dispute that

---

[plaintiff] was exempt from the FLSA's overtime pay requirements under its 'execution exemption'").

[38]     *Ale v. TVA*, 269 F.3d 680, 691 n.4 (6th Cir. 2001) (quotation omitted) (holding that the defendant has the burden to establish the elements of the affirmative defense by a preponderance of the evidence).

[39]     (Answer at 5.)

[40]     29 C.F.R. § 541.100(a) (2007).

Plaintiff McKinney was paid a salary of $400 per week. Additionally, they do not dispute that Plaintiff Pruett was paid a salary ranging from $420 per week to $440 per week. Therefore, the salaries of Plaintiffs Williams, McKinney, and Pruett fail to meet the requirement of 29 C.F.R. § 541.100(a)(1) that they earn a salary of "not less than $455 per week," and they cannot qualify under the FLSA's bona fide executive employee exemption.[41]

Even if Defendants had successfully proven by a preponderance of the evidence that Plaintiff Williams earned not less than $455 per week, Plaintiff Williams would still fail to qualify under the bona fide executive employee exemption. Defendants do not dispute that Plaintiff Williams spent only 20% of his time performing managerial functions, and managerial responsibilities totaling only one-fifth of an employee's time does not make their managerial duties the "primary duty" of their employment as required by § 541.100(a)(2). Moreover, Plaintiff Williams did not have the authority to hire or fire employees, which is a requirement under § 541.100(a)(3). Therefore, the Court finds that Defendants have failed to meet their burden of proof as to the affirmative defense of the FLSA exemption for bona fide executive employees.[42]

---

[41] The Court notes that Plaintiff Williams earned a gas stipend of $200 per week during his employment with Defendants. However, Defendants have cited no authority stating that the Court should include this $200 a week stipend as part of Plaintiff Williams' salary. Additionally, Plaintiff McKinney's gas stipend of $50 per week, when added to his weekly salary of $400 per week, would not bring him above the threshold required to qualify under the bona fide executive employee exemption. Defendants do not indicate whether Plaintiff Pruett received a gas stipend. Therefore, the Court finds that Defendants have failed to satisfy their burden to prove the applicability of this FLSA exemption by a preponderance of the evidence.

[42] Defendants also failed to submit evidence which would prove the applicability of the bona fide executive employee exemption by a preponderance of the evidence as to the two remaining salaried plaintiffs.

Defendants could also be asserting that the salaried plaintiffs are bona fide administrative employees qualifying for an FLSA exemption under § 213(a)(1).[43] To prove that the salaried plaintiffs are bona fide administrative employees, Defendants must demonstrate three elements for each employee: (1) the employee is "compensated on a salary or free basis at a rate of not less than $250 per week," (2) the employees's "primary duty consists of . . . [t]he performance of nonmanual work directly related to management policies or general business operations" of Defendants, and (3) the employee's work "includes work requiring the exercise of discretion and independent judgment."[44]

As under the bona fide executive employee exemption, Defendants have failed to put forth evidence which proves the applicability of the bona fide administrative employee exemption by a preponderance of the evidence. While the first prong of the short test is satisfied, Defendants fail to provide evidence regarding the primary duties of Plaintiffs McKinney, Darrell Hoskins, and Pruett, and they do not dispute that Plaintiff Williams spent about 20% of his time performing managerial functions for Defendants. As such, his "primary duty" was not directly related to management policies, and he cannot satisfy the second prong of the bona fide administrative employee exemption. Thus, the Court finds that Defendants have not met their burden of proof as to the bona fide administrative employee exemption under the FLSA.

---

[43]     The Department of Labor's regulations regarding the definition of a bona fide administrative employee include both a "long test" for employees paid on a salary basis of "not less than $155 per week" and a "short test" for employees paid on a salary basis of "not less than $250 per week." 29 C.F.R. §§ 541.2(e)(1)-(2). Here, the Court will apply the short test, as it is not disputed that all four salaried plaintiffs earned salaries of more than $250 per week.

[44]     29 C.F.R. § 541.2(e)(2).

Thus, the Court finds that Defendants have not satisfied their burden of proof as to the affirmative defense of an FLSA exemption for coverage of salaried employees, and no exemption will remove the salaried employees from FLSA coverage.

**Consent to Salaried Status**

Defendants also argue that their salaried employees "were aware of and consented to their salaried status and the payment of a fixed sum per week regardless of the number of hours worked each week."[45] Therefore, Defendants assert that Plaintiffs should be denied recovery for alleged overtime.[46] Plaintiffs assert that they could not expressly or impliedly agree to waive their rights to overtime compensation under the FLSA.[47]

The United States Supreme Court has "frequently emphasized the nonwaivable nature of an individual employee's right to a minimum wage and to overtime pay under the [FLSA]."[48] In *Barrentine*, the court noted that "FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate."[49]

Therefore, contrary to Defendants' assertions, the Court finds that Plaintiffs did not waive their rights to overtime compensation under the FLSA, nor did the acceptance of their salaries without protest cause them to waive their right to recover those wages under the FLSA.

---

[45] (Resp. of Defs. to Pls.' Mot. for Summ. J., D.E. # 55, at 2.)

[46] (*Id.*)

[47] (Pls.' Reply in Supp. of their Mot. for Summ. J., D.E. # 57, at 4.)

[48] *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981).

[49] *Id.*

Thus, for the foregoing reasons, Defendants' Motion for Summary Judgment as to lack of FLSA coverage of their salaried employees is **DENIED**.

<u>**Liability of Defendant Bailey**</u>

The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ."[50] The FLSA's remedial purposes "require the courts to define 'employer' more broadly than the term would be interpreted in traditional common law applications."[51] Whether a party is an employer within the meaning of the FLSA is a legal determination appropriate for summary judgment.[52] The Sixth Circuit applies the "economic realities" test to determine whether a party is an employer under the FLSA,[53] as more than one employer can be responsible for FLSA violations.[54]

The economic realities test "examines whether the alleged employer 'has a significant ownership interest in [the corporation that employs the plaintiffs], controls significant functions of the business, and determines salaries and hiring decisions.'"[55] The test "focuses on whether the individual was the person who made the decisions that allegedly violated the FLSA."[56] Additionally, the *Cole Enterprises* court identified two situations in which defendants were

---

[50]     29 U.S.C. § 203(d).

[51]     *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir. 1991).

[52]     *See id.*

[53]     *Fegley v. Higgins*, 19 F.3d 1126, 1131 (6th Cir. 1994).

[54]     *U.S. Dep't of Labor v. Cole Enters., Inc.*, 62 F.3d 775, 778 (6th Cir. 1995).

[55]     *Gonzalez v. HCA, Inc.*, No. 3:10-00577, 2011 WL 3793651, at *13 (M.D. Tenn. Aug. 25, 2011) (quoting *Cole Enters.*, 62 F.3d at 778).

[56]     *Id.*

"employers" under the FLSA.[57]  First, the court noted that "a corporate officer who has operational control of the corporation's covered enterprise is an 'employer' under the FLSA, along with the corporation itself."[58]  Second, the court also noted that "one who is the chief executive officer of a corporation, has a significant ownership interest in it, controls significant functions of the business, and determines salaries and makes hiring decisions has operational control and qualifies as an 'employer' for purposes of the FLSA."[59]  In these situations, the employers are jointly and severally liable under the FLSA for the unpaid wages.[60]

The parties do not dispute that Hooah is Plaintiffs' employer for FLSA purposes. However, Defendants dispute that Defendant Bailey also qualifies as Plaintiffs' employer. Whether a party is an employer under the FLSA is a question of law.[61]

Plaintiffs argue that Defendant Bailey has solely owned and operated Hooah since 2008, and that he performed a myriad of managerial activities, including

> negotiat[ing] Hooah's contracts with customers; interview[ing] Plaintiffs and other prospective employees; [making] the decisions on [the] hiring and firing of Plaintiffs and Hooah's other employees; determin[ing] pay rates and salaries of Plaintiffs and other employees; determin[ing] if and when Plaintiffs got raises, promotions, or demotions; over[seeing] the finances; determin[ing] the work schedules of Plaintiffs, and develop[ing] the employment policies for Hooah.[62]

Defendants do not address this argument in their Response to Plaintiff's Motion for Summary

---

[57]     *Id.*

[58]     *Id.*

[59]     *Id.*

[60]     *Fegley*, 19 F.3d at 1131.

[61]     *See Dole*, 942 F.2d at 965.

[62]     (Pls.' Mem. in Supp. of Mot. for Summ. J., D.E. # 49-1, at 4.)

Judgment, nor do they discuss it in their own Motion for Summary Judgment. Furthermore, Defendants do not dispute these facts.

Here, the Court finds that Defendant Bailey is an "employer" as defined by the FLSA. Defendant Bailey controlled significant functions of Hooah, including the hiring and firing of employees, creating employment policies, and negotiating contracts with customers. Defendant Bailey also determined Plaintiffs' amount of payment, whether they received raises, and their work schedules. Therefore, he would have been in control of the decisions violating the FLSA. Accordingly, Defendant Bailey is an "employer" along with Hooah, and he is jointly and severally liable for the damages owed to Plaintiffs.

Thus, Plaintffs' Motion for Summary Judgment as to Defendant Bailey's status as a joint employer with Hooah is **GRANTED**.

## Violation of the FLSA

The Court has found that Hooah and Defendant Bailey are employers covered by the FLSA, and all Plaintiffs fall within the protections of the FLSA as well. It is undisputed that Defendants did not pay Plaintiffs time and a half their regular rate of pay for the hours they worked over forty in a workweek. Defendants failed to pay Plaintiffs overtime because they did not have the money to do so. Morever, Defendants do not dispute that they should have paid their security guards time and a half for overtime hours worked. Therefore, Defendants have failed to comply with the FLSA, and they have violated the FLSA by not paying Plaintiffs for the overtime hours they worked. Thus, the Plaintiffs' Motion for Summary Judgment as to Defendants' violation of the FLSA is **GRANTED**.

## Damages

**Liquidated Damages**

Section 216(b) of the FLSA provides that "[a]ny employer who violates the provisions of [§] 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."[63]  The Sixth Circuit has characterized these damages as "compensation, not a penalty or punishment."[64]  They are "the norm" and have even been referred to by the Sixth Circuit as "mandatory."[65]  The FLSA grants district courts discretion not to award liquidated damages if the employer "shows that 'the act or omission giving rise to [its violation] was in good faith and that he had reasonable grounds for believing that [its] act or omission was not a violation of the [FLSA].'"[66]  Additionally, "the burden of establishing good faith for an employer is 'substantial,' . . . and a failure to comply with the provisions of the Act must be based on objectively reasonable grounds."[67]

It is undisputed that Defendants did not know that the law required them to pay their security guards time and a half for overtime hours worked.  Defendants do not dispute that they did nothing to determine whether they were required by law to pay their security guards time and a half for overtime hours worked.

Therefore, the Court finds that Plaintiffs are entitled to both the unpaid overtime

---

[63]     29 U.S.C. § 216(b).

[64]     *Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 849 (6th Cir. 2002).

[65]     *Martin*, 381 F.3d at 585.

[66]     *Solis v. Min Fang Yang*, 345 F. App'x 35, 38-39 (6th Cir. 2009) (quoting 29 U.S.C. § 260).

[67]     *Id.* at 39 (quotation omitted).

compensation amount and an additional equal amount as liquidated damages. The parties do not dispute the amount of overtime pay requested by Plaintiffs. Therefore, the Court finds that each Plaintiff is entitled to his or her asserted unpaid overtime compensation amount. Furthermore, Defendants have provided no evidence they can avoid an award of liquidated damages in this action. Consequently, the Court finds that each Plaintiff is entitled to an additional equal amount of unpaid overtime compensation as liquidated damages.

### Amount of Damages

Under the FLSA, employees have the burden of proving "by a preponderance of the evidence of that they performed work for which [they] were not properly compensated."[68] Typically, an employee can prove damages "through discovery and analysis of the employer's code-mandated records."[69] But if the employer "kept inaccurate or inadequate records, the plaintiff's burden of proof is relaxed, and, upon satisfaction of that relaxed burden, the onus shifts to the employer to negate the employee's inferential damage estimate."[70] The employee meets this relaxed burden "if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."[71] If the employee produces enough evidence to raise this "just and reasonable inference," the burden "then shifts to the employer to

---

[68]     *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 551 (6th Cir. 1999) (internal punctuation omitted).

[69]     *Id.*

[70]     *Id.*

[71]     *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946) (overruled in part by the Portal to Portal Act).

come forward with evidence of the precise amount of work performed or with evidence to [negate] the reasonableness of the inference to be drawn from the employee's evidence."[72] Finally, "[i]f the employer fails to produce such evidence, the court may then award damages to the employees, even though the result be only approximate."[73]

For the hourly employees, neither party disputes the amount of overtime hours worked by Plaintiffs Dockery, Boullion, Billy Hoskins, and Smith or the overtime compensation owed to them. Accordingly, the Court finds that Plaintiffs have raised a just and reasonable inference as to the damages they are owed for Defendants' FLSA violation, and Defendants have not negated the reasonableness of that inference. The Court accepts Plaintiffs' undisputed calculation of the damages owed to them.

Therefore, Plaintiff Dockery is entitled to $942.76—$471.38 in unpaid overtime wages and $471.38 in liquidated damages. Plaintiff Boullion is entitled to $450.50—$225.25 in unpaid overtime wages and $225.25 in liquidated damages. Plaintiff Billy Hoskins is entitled to $856.50—$428.25 in unpaid overtime wages and $428.25 in liquidated damages. Plaintiff Smith is entitled to $320.00—$160.00 in unpaid overtime wages and $160.00 in liquidated damages.

However, all four salaried plaintiffs lack either time records or pay records. Defendant has no pay records for Plaintiff Williams for the periods of December 6, 2007, to January 11, 2008, and December 26, 2008 to February 20, 2009.[74] Moreover, Plaintiff Williams did not turn

---

[72]     *Id.*

[73]     *Id.*

[74]     (Defs.' Reply to Plaintiffs' Statement of Undisputed Facts, D.E. # 55-1, at 7.)

in time sheets showing the amount of hours he worked per week, and Defendants do not have records showing the number of hours he worked.[75]  Plaintiff Williams has presented estimates of the amount of overtime he worked per week, and Defendants do not dispute those estimates. Therefore, the Court finds that Plaintiff Williams has raised a just and reasonable inference as to the amount of overtime he worked.  Defendants do not dispute these estimates or the estimated amount of salary Plaintiff Williams earned during his employment with Defendants.  Therefore, Defendants neither challenged nor negated this inference, and the Court finds there is no dispute of any material facts related to Plaintiff Williams' asserted amount of damages.

But Plaintiffs have included Plaintiff Williams' $200 gas stipend as part of his salary in their calculation of his damages.[76]  The Court can find no authority stating that gas stipends are to be included in salary calculations under the FLSA.  Plaintiffs, who bear the burden of establishing the reasonableness of their asserted damages, have not presented the Court with any authority indicating that Plaintiffs' overtime wage compensation should include their gas stipends.  According to their declarations, all four salaried plaintiffs' job duties included patrolling customer locations via vehicle and standing post at certain locations.[77]  Yet only two of these plaintiffs, Plaintiff Williams and Plaintiff McKinney, stated that they were paid a gas stipend.  To consider a gas stipend part of the salary paid to Plaintiffs Williams and McKinney when the other two salaried plaintiffs received no gas stipend for performing the same duties seems illogical to the Court.  Additionally, the Court is calculating damages for the overtime

---

[75]     (*Id.* at 8.)

[76]     (*Id.* at 9.)

[77]     (Pls.' Mot. for Summ. J., D.E. # 49-3, 49-4, 49-5, 49-6.)

work Plaintiffs performed.  To be paid time-and-a-half for their uncompensated overtime work under the FLSA is both just and reasonable; however, to receive 150% of their gas stipend as damages—which is not a reflection of the amount of work they performed—would be inappropriate.

Therefore, in the absence of contrary authority, the Court finds that Plaintiff Williams' gas stipend should not be included in his overtime compensation calculation under the FLSA. Using Plaintiffs' formula, the Court finds that Plaintiff Williams is entitled to $1,200.00 in overtime compensation for the period of December 6, 2007, to June 27, 2008.[78]  Plaintiff Williams is also entitled to $1.452.00 in overtime compensation for the period of July 4, 2008, through February 20, 2009.[79]  Therefore, Plaintiff Williams' total amount of overtime compensation due is $2,652.00.  As such, the Court determines that Plaintiff Williams is owed a total of $5,304.00—$2,652.00 in unpaid overtime wages and $2,652.00 in liquidated damages.

As to Plaintiff McKinney, Defendants lacks his time records for the ten weeks between March 14, 2008, and May 25, 2008, and the twenty-three weeks between October 1, 2008, and March 16, 2009.[80]  However, Plaintiff McKinney has presented estimates of the amount of time he worked during those periods, and Defendants have not disputed either the amount of time or the overtime compensation he is owed.  Defendants only dispute Plaintiff McKinney's coverage

---

[78]     $400.00 per week / 50 hours = $8.00 / 2 = $4.00 x 10 hours of overtime per week = $40.00 x 30 weeks = $1,200.00.  (Defs.' Reply to Plaintiffs' Statement of Undisputed Facts, D.E. # 55-1, at 9.)  Defendants disputed this calculation to the extend that "Williams was not entitled to overtime compensation as a salaried employee."  (*Id.*)

[79]     $440.00 per week / 50 = $8.80 / 2 = $4.40 x 10 hours of overtime per week = $44.00 x 33 weeks = $1,452.00.  (*Id.*)

[80]     (Defs.' Reply to Plaintiffs' Statement of Undisputed Facts, D.E. # 55-1, at 10.)

under the FLSA while he was a salaried employee. Accordingly, the Court finds that Plaintiff McKinney has satisfied his burden of raising a just and reasonable inference as to the amount of damages he is owed for Defendants' FLSA violation, and Defendants neither challenge nor dispute the amount he would be owed or the amount of hours he worked.

However, Plaintiffs included Defendant McKinney's gas stipend of $50 per week, which he earned from October 1, 2008, through March 16, 2009, in their calculation of his compensation. As discussed above, the Court finds the inclusion of the gas stipend in the time-and-a-half calculation to be inappropriate. Accordingly, using Plaintiffs' formula, the Court finds that Plaintiff McKinney is entitled to $920.00 in overtime compensation for the period of October 1, 2008, to March 16, 2009.[81] Defendants do not dispute that he is owed $540.00 in overtime for the period between March 14, 2008, and May 25, 2008. Defendants dispute that Plaintiff McKinney would be owed $490.50 for 109 hours of overtime between May 25, 2008, and October 1, 2008, only because he became a salaried employee during that time. The Court has held that Plaintiff McKinney was covered by the FLSA while he was a salaried employee. Therefore, the Court finds that Plaintiff McKinney's total amount of overtime compensation due is $1,950.50. As such, the Court determines that Plaintiff Williams is owed a total of $3,901.00—$1,950.50 in unpaid overtime wages and $1.950.50 in liquidated damages.

As to Plaintiff Darrell Hoskins, Defendants do not have records for the five-week period between February 1, 2009, and March 17, 2009.[82] However, they dispute Plaintiff Darrell

---

[81] $400 per week / 50 hours = $8.00 per hour / 2 = $4.00 per hour x 10 hours of overtime per week = $40 x 23 weeks = $920.00. (*Id.* at 11.)

[82] (Defs.' Reply to Plaintiffs' Statement of Undisputed Facts, D.E. # 55-1, at 14.)

Hoskins' assertion that he worked approximately ten hours of overtime during this time because he was a salaried employee not entitled to overtime compensation.[83]  Defendants extend this objection to all overtime compensation Plaintiff Darrell Hoskins is owed while he was a salaried employee, but they do not dispute the amount of the alleged damages or hours of overtime he worked.  The Court has held that Defendants' salaried employees are covered by the FLSA.  As such, the Court finds that Plaintiff Darrell Hoskins has met his burden to prove his damages, and Defendants have not presented evidence that his reported hours are inaccurate.  Accordingly, the Court finds that Plaintiff Darrell Hoskins' total amount of overtime compensation due is $1,065.00.  Thus, the Court determines that Plaintiff Darrell Hoskins is owed a total of $2,130.00—$1,065.00 in unpaid overtime wages and $1,065.00 in liquidated damges.

Finally, Defendants do not dispute that they do not have any records showing the amount of hours worked by Plaintiff Pruett or the amounts he was paid during his employment.[84]  Defendants dispute that Plaintiff Pruett is entitled to overtime compensation due to his status as a salaried employee, but they do not dispute that he worked approximately fifty-five hours per week or the amount of his salary.  The Court has held that Defendants' salaried employees are covered by the FLSA.  Accordingly, the Court finds that Plaintiff Pruett has met his burden as to the amount of hours he has worked and the amount of damages to which he is entitled, and Defendants have not presented evidence that these damages are inaccurate, incorrect, or improper.  Therefore, the Court finds that Plaintiff Pruett's total amount of overtime compensation due is $2,149.10.  Thus, the Court determines that Plaintiff Pruett is owed a total

---

[83]     (*Id.*)

[84]     (Defs.' Reply to Plaintiffs' Statement of Undisputed Facts, D.E. # 55-1, at 16.)

of $4,298.20—$2,149.10 in unpaid overtime wages and $2,149.00 in liquidated damages.

As previously addressed, Hooah and Defendant Bailey are jointly and severally liable for these compensation amounts. Accordingly, Plaintiffs' Motion for Summary Judgment as to damages and liquidated damages is **GRANTED**.

### Attorney's Fees

Plaintiffs also seek reasonable attorneys' fees, pre-judgment and post-judgment interest, and costs incurred as a result of this litigation.[85] According to 29 U.S.C. § 216(b), "[t]he Court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." Thus, because a judgment for unpaid wages and liquidated damages has been entered, Plaintiffs' request for attorney's fees and costs is **GRANTED**.

Therefore, Plaintiffs shall submit within thirty (30) days of this Order a Motion for Reasonable Attorney's Fees, Pre-Judgment and Post-Judgment Interest, and Costs. Defendants shall then have thirty (30) days following the filing of Plaintiffs' Motion to respond. The Court will then determine the amount of attorney's fees, costs, and pre-judgment and post-judgment interest to be awarded by separate order.

### CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Summary Judgment is **GRANTED**, and Defendants' Motion for Summary Judgment is **DENIED**. Judgment is to be entered for Plaintiff Dockery in the amount of $942.76, Plaintiff Bouillon in the amount of $450.50, Plaintiff Billy Hoskins in the amount of $856.50, Plaintiff Smith in the amount of

---

[85] (Compl. at 6.)

$320.00, Plaintiff Williams in the amount of $5,304.00, Plaintiff McKinney in the amount of $3,901.00, Plaintiff Darrell Hoskins in the amount of $2,130.00, and Plaintiff Pruett in the amount of $4,298.20.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: November 18, 2011.